## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KENNETH D. ADAMS,

    Petitioner,

    v.

JAY SHELTON, ET AL.,

    Respondents.

Case No. 15-3219-JAR

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Kenneth D. Adams' Petition for Writ of Habeas Corpus (Doc. 1), Respondents' Answer and Return (Doc. 19), Petitioner's Traverse (Doc. 20), his Amended Petition (Doc. 24), and the state court records (Doc. 13). Adams, proceeding *pro se*, alleges twenty-four grounds for relief, including ineffective assistance of counsel, jury instruction errors, and sentencing errors. This matter is fully briefed,[1] and the Court is prepared to rule. After a careful review of the record and the arguments presented, the Court denies Petitioner's Amended Petition without need for an evidentiary hearing.[2]

## I.    Federal Habeas Standards

### A.    Generally

The Court reviews Petitioner's challenges to state-court proceedings pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA").[3] The AEDPA requires that federal

---

[1] The Court did not order Respondents to file an answer to the Amended Petition. *See* Rule 5 of the Rules Governing § 2254 Cases.

[2] Petitioner summarily requested an evidentiary hearing without indicating what evidence he needs to submit (Doc. 24 at 40). "[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (citing *Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003)). That is the case here.

[3] *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).

courts give "significant deference to state court decisions" adjudicated on the merits.[4]  Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless the petitioner establishes the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court has "done on a set of materially indistinguishable facts" or "if the state court applies a rule different from the governing law" set forth in Supreme Court cases.[6]  A decision is an "unreasonable application" of clearly established federal law if a "state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of [a petitioner's] case."[7] Additionally, "an unreasonable application may occur if [a] state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply."[8]  Courts employ an objective standard in determining what is unreasonable.[9]

A federal court must presume the state court's factual findings, including credibility findings, are correct in the absence of clear and convincing evidence to the contrary.[10]  The law

---

[4] *Id.*

[5] *Williams v. Trammel*, 782 F.3d 1184, 1191 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

[6] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

[7] *Id.* (citing *Williams*, 529 U.S. at 407–08).

[8] *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

[9] *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 409–10).

[10] 28 U.S.C. § 2254(e)(1).

"stops just 'short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.'"[11]  Courts may not issue a writ of habeas corpus if "'fairminded jurists could disagree' on the correctness of the state court's decision."[12]  Even when a petitioner has a strong case for relief, this "does not mean that the state court's contrary conclusion was unreasonable."[13]

Because Adams proceeds *pro se*, the Court must construe his pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[14]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[15]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[16]

## B.    Exhaustion and Procedural Default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted the available state court remedies.[17]  Under the exhaustion doctrine, "[a petitioner] must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[18]  "[A]ny claims not included in a petition for discretionary review are unexhausted."[19]  Ordinarily, when a petitioner does not

---

[11] *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

[12] *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[13] *Id.* at 102.

[14] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[15] *Whitney*, 113 F.3d at 1773.

[16] *E.g., Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17] 28 U.S.C. § 2254(b)(1); *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).

[18] *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).

[19] *Id.*

bring claims to the state's highest court, a claim is unexhausted.[20]  However, if a petitioner's claims are barred under state law and it is too late to pursue relief in state court, a claim will be deemed exhausted because there are no state remedies available to the petitioner.[21]

Even where the claim is considered exhausted because there are no state remedies available, the claim may be subject to dismissal for procedural default.[22]  For the Court to review a claim that has been procedurally defaulted, the petitioner must: 1) allege sufficient cause for failing to raise the claim and resulting prejudice, or 2) demonstrate that the failure to consider the procedurally defaulted claim will result in a fundamental miscarriage of justice because the petitioner made a credible showing of actual innocence.[23]  "Cause" requires the petitioner show that some objective external factor impeded efforts to comply with state procedural rules.[24]  "Prejudice" requires the petitioner to demonstrate "actual prejudice as a result of the alleged violation of federal law."[25]

### C.  Ineffective Assistance of Counsel

The Supreme Court set forth the standard to review ineffective assistance of counsel claims in *Strickland v. Washington*.[26]  *Strickland* requires a petitioner to show both that his

---

[20] *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

[21] *Verlarde v. Archuleta*, 740 F. App'x 740, 744 (10th Cir. 2016) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)); *Coleman*, 501 U.S. at 732.

[22] *Frost*, 749 F.3d at 1231 (quoting *Coleman*, 501 U.S. at 735 n.1).

[23] *Id.* (citations omitted).

[24] *Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003) (citing *Coleman*, 501 U.S. at 750).

[25] *Fairchild v. Trammel*, 784 F.3d 702, 719 (10th Cir. 2015) (quoting *Coleman*, 501 U.S. at 750).

[26] 466 U.S. 668 (1984).

counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense."[27]  Failure under either prong is dispositive.[28]

In reviewing counsel's performance, courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[29]  "To be deficient, the performance must be outside the wide range of professionally competent assistance.  In other words, it must have been completely unreasonable, not merely wrong."[30]  Petitioner bears a heavy burden of overcoming the presumption that counsel's actions were sound trial strategy.[31]  This burden increases doubly at the § 2254 proceeding level as federal courts defer not only to the attorney's decision in how to best represent a client, but also to the state court's determination that counsel' s performance was not deficient.[32]

## II.    Factual Background

The Court presumes the state court's factual determinations are correct, unless the petitioner rebuts the presumption with clear and convincing evidence.[33]  Adams has not proffered any evidence in support of that burden.  Thus, the Court adopts the following facts from the Kansas Supreme Court ("KSC") opinion affirming his conviction.[34]

> Adams was arrested following an investigation that began with a routine traffic stop of Adams' housemate, Rachel Nelson.  Nelson was stopped in Protection, Kansas, after Police Chief Darren Konrade saw her run a stop sign.  Nelson appeared to be intoxicated, so Konrade conducted field sobriety tests.  Nelson failed the tests and admitted to drinking alcohol and smoking methamphetamine.

---

[27] *Id*. at 687–88.

[28] *Id.* at 697.

[29] *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

[30] *Id.* (internal quotations and citations omitted).

[31] *Id.*

[32] *Id.*

[33] 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

[34] *State v Adams*, 273 P.3d 718 (Kan. 2012).

Konrade arrested Nelson and advised her of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, reh. denied 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

Konrade searched the pickup truck Nelson was driving and Nelson's purse. In the purse, he found a handwritten list of several items that he recognized were commonly used in the manufacture of methamphetamine: toluene, D batteries, lithium, starting fluid, and distilled water. Nelson admitted she had purchased some of these items with the purpose of manufacturing methamphetamine. She claimed the manufacturing process was done in Oklahoma, although she indicated that she lived in Protection with "Kenny Adams." After further questioning, Nelson admitted some of the items had been purchased the previous day and were at her home in Protection. Nelson was taken to the police station where she completed a written statement. In that statement, she provided additional details regarding her involvement in methamphetamine manufacturing and implicated George Pitcherello as the person responsible for manufacturing the methamphetamine.

Less than 3 hours after the initial traffic stop, law enforcement officers executed a search warrant on Nelson's home in Protection. On arrival at the home, officers saw three individuals standing by a parked car and a woman and a small child sitting inside the car. Adams was one of the three individuals standing by the car.

While outside the home, officers could smell odors they associated with methamphetamine manufacturing, and, upon entering the home, the officers observed a haze throughout the kitchen area and traced the strong chemical odor to a bottle sitting in a skillet. Officers found a bedroom they suspected was being used for a methamphetamine lab and noticed several items commonly used in the manufacture of methamphetamine. The officers then called in agents for the Kansas Bureau of Investigation (KBI) to process a possible methamphetamine lab.

At that point, the officers detained several suspects, including Adams. Adams was given a recitation of his Miranda rights, after which Adams made several statements that indicated he was familiar with the pieces of paraphernalia being used in his house to manufacture methamphetamine and with the manufacturing process.

The KBI agents performed a complete search of the home and processed a large number of items used in the manufacture of methamphetamine. After these items were tested, methamphetamine was detected in at least eight different samples of liquids, powders, and other substances taken from the scene. Methamphetamine only was detected in at least four samples, while other samples contained a mix of methamphetamine and one or more of the following products: pseudoephedrine, toluene, and ethyl ether. Other samples did not test positive for methamphetamine but contained various chemicals either used during

methamphetamine manufacturing or produced naturally by the process, including lithium metal, ammonia, ethanol, methanol, ethyl ether, hydrochloric acid, toluene, sodium chloride, and sulfuric acid.

The State charged Adams with six counts: (1) manufacture of methamphetamine in violation of K.S.A. 2007 Supp. 65–4159(a), a severity level 1 drug felony, or alternatively, attempted manufacture of methamphetamine, see K.S.A. 21–3301; (2) conspiracy to manufacture methamphetamine in violation of K.S.A. 21–3302(a) and K.S.A. 2007 Supp. 65–4159(a), a severity level 1 drug felony; (3) possession of lithium metal with the intent to manufacture methamphetamine in violation of K.S.A. 2007 Supp. 65–7006(a), a severity level 2 drug felony; (4) possession of drug paraphernalia with intent to manufacture a controlled substance in violation of K.S.A. 2007 Supp. 65–4152(a)(3), a severity level 4 drug felony; (5) possession of methamphetamine in violation of K.S.A. 2007 Supp. 65–4160(a), a severity level 4 drug felony; and (6) possession of drug paraphernalia in violation of K.S.A. 2007 Supp. 65–4152(a)(2), a class A nonperson misdemeanor.

After his preliminary hearing but before trial, Adams filed a motion to suppress the evidence obtained when officers executed the search warrant. The trial court denied the motion.

At trial, Nelson testified for the State and indicated she and Adams had used methamphetamine the day of the traffic stop. Nelson also testified she and Adams had used various forms of paraphernalia to ingest the methamphetamine. Nelson then testified that Adams and Pitcherello had been partners in manufacturing methamphetamine. She also testified to some of the specific methamphetamine manufacturing processes they used.

In addition to Nelson's testimony, two other individuals who were present when the search warrant was executed, Tina Steinbarger and Charles Townsend, testified. Steinbarger testified that she, Townsend, and Pitcherello had driven together from Oklahoma to Adams' home in Kansas. When the group arrived at Adams' home, Pitcherello went inside. Townsend and Steinbarger went into the home about 30 minutes later. Steinbarger testified that once inside, she, Townsend, and Pitcherello all injected methamphetamine. According to her, she did not possess any methamphetamine when she arrived in Protection.

Townsend testified that he had provided Pitcherello and Adams with pseudoephedrine pills in exchange for the two manufacturing methamphetamine for him. Townsend testified that while he and Steinbarger waited outside, he saw shadows in a room where Steinbarger had told him Pitcherello and Adams were cooking methamphetamine. Townsend entered the home, and the people inside, including Adams, were using methamphetamine. Townsend testified that after using the methamphetamine, Adams walked back toward the room where Townsend had seen the shadows. Adams entered the room, and an ammonia-like

odor got much stronger.  Pitcherello left the room holding a small, brown container with methamphetamine.  Townsend identified that small, brown container as one of the containers police seized in the bust and explained that Pitcherello did not have that or any other methamphetamine when he arrived at Adams' house.[35]

On July 2, 2008, a jury found Adams of guilty of all charges.  The alternative charge of attempted manufacture of methamphetamine was dismissed as multiplicitous.  On September 30, 2008, the trial court sentenced Adams to 148 months' imprisonment for the manufacture of methamphetamine, 148 months for conspiracy, 51 months for possession of lithium metal, 12 months for possession of drug paraphernalia, 12 months for possession of methamphetamine, and 12 months in the county jail for misdemeanor possession of drug paraphernalia.  The trial court ordered these sentences to run concurrently, but consecutive to another sentence in Oklahoma.

Adams appealed his convictions and sentences.  On June 4, 2010, the Kansas Court of Appeals ("KCOA") affirmed his convictions and sentences.[36]  Adams sought review of that decision by the KSC.  On April 6, 2012, the KSC upheld Adams' convictions, but found Adams had been erroneously sentenced on his conviction for possession of lithium metal with intent to manufacture a controlled substance.[37]  The KSC remanded the case to the trial court for resentencing of that possession count as a severity level 4 drug felony, rather than a level 2 offense.[38]

---

[35] *Id*. at 721–22.

[36] *State v. Adams*, 232 P.3d 347 (Kan. App. 2010).

[37] *State v. Adams*, 273 P.3d 718, 728 (Kan. 2012).

[38] *Id*. at 728–29.

On May 29, 2012, Adams filed a motion for post-conviction relief under K.S.A. § 60-1507 (the "1507 Motion"), in Comanche District Court, raising 14 grounds for relief.[39]  Adams mainly claimed his trial attorney, Robert Slinkard, had provided ineffective assistance of counsel due to his failure to review the video of Nelson's arrest with Adams prior to the suppression hearing and his failure to effectively cross-examine the State's witnesses.

In July 2012, Adams filed a motion to vacate and arrest judgment.[40]  He alleged that "a structural defect in the trial procedure" divested the district court of "jurisdiction to impose sentence" on him.[41]  He argued that the reasonable doubt instruction provided at his jury trial was disapproved in a recent case, which warranted vacating his sentence and granting him a new trial.

On October 1, 2012, the district court held an evidentiary hearing on the 1507 Motion. Adams and Slinkard testified.  The court denied the 1507 Motion, finding Slinkard's performance constitutionally adequate.  The court also denied the motion to vacate, finding that the reasonable doubt instruction did not misstate the law.  The court then resentenced Adams pursuant to the KSC's decision.

Adams appealed these decisions in two separate cases.  On August 8, 2014, the KCOA dismissed the appeal of the instructional error for lack of jurisdiction in *State v. Adams*, 330 P.3d 441 (Kan. App. 2014).  The KSC denied review of that decision on July 27, 2015.

On October 31, 2014, the KCOA affirmed the denial of the 1507 Motion in *Adams v. State*, 337 P.3d 72 (Kan. App. 2014).  The KSC denied review of that decision on July 24, 2015.

---

[39] Vol. 1 in Appellate Case No. 13-110850-A, 3–109.

[40] Vol. 1 in Appellate Case No. 13-110218-A, 36–39.

[41] *Id.* at 36.

On September 12, 2015, Adams filed this federal habeas case, alleging twenty-one grounds for relief.  Respondents filed an Answer on June 3, 2016.  Adams filed his Traverse on August 25, 2016.  He then sought a stay of proceedings to fully exhaust several issues at the state level.[42]  This Court denied the stay request, but granted Adams leave to submit an amended Petition presenting only exhausted federal claims.[43]  Adams filed an amended petition on January 26, 2017, asserting three additional claims.[44]  For convenience, the Court denominates the three additional grounds as follows: denial of marital privilege ("Ground 22"); ineffective assistance of appellate counsel ("Ground 23"); and resentencing error due to addition of a conspiracy element to the sentence ("Ground 24").

### III.    Analysis

Adams has withdrawn Ground 13 as a basis for federal habeas relief.[45]  Adams has abandoned Ground 21 since his briefs did not specifically address it, but mistakenly lumped it with Grounds 17-20, which are ineffective assistance of counsel claims.[46]  The Court divides the remaining grounds into six categories and discusses them seriatim.

### A.  Search Warrant (Grounds 1-3)

Grounds 1 through 3 attack the validity of the search warrant.  Adams asserts that law enforcement coerced Nelson into making statements that suggested drug-related activity occurred at the home she shared with Adams (Ground 1), omitted conflicting material statements

---

[42] Doc. 17.

[43] Doc. 22.

[44] Doc. 24.

[45] Doc. 20 at 11.

[46] *Krumm v. Holder*, 594 F. App'x 497, 501 (10th Cir. 2014) ("A party, including a pro se litigant, waives an inadequately briefed issue. . . ."); *State v. LaMae*, 368 P.3d 1110, 1111 (Kan. 2016) (stating an issue not briefed by the appellant is deemed waived or abandoned).  Ground 21 alleges Adams' rights were violated when the state district court conducted the 1507-evidentiary hearing on October 1, 2012, without issuing subpoenas as requested in his praecipe.

made by Nelson (Ground 2), and fabricated statements to obtain the issuance of the search warrant (Ground 3).  He argues that without the search warrant, a jury could not have found him guilty of six drug-related crimes, including the possession and manufacture of methamphetamine.

Under existing Supreme Court precedent, Fourth Amendment claims generally may not be raised in a habeas corpus petition.  In *Stone v. Powell*,[47] the Supreme Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."[48]  The Tenth Circuit has interpreted the "opportunity for full and fair consideration" to include the procedural opportunity to raise a Fourth Amendment claim, the full and fair evidentiary hearing contemplated by *Townsend v. Sain*,[49] and the state court's application of the correct and controlling constitutional standards.[50]

Adams does not allege that he lacked an opportunity for a full and fair hearing on these issues before the state trial court.  Indeed, the record shows that he did in fact have one.  On April 25, 2008, Adams, through counsel, filed a motion to suppress the search warrant, alleging: 1) Nelson had not made any statements about the house when she was arrested; 2) the police fabricated the statements that tied methamphetamine to Adams' home; and 3) the affiant overstated his knowledge of the process of manufacturing methamphetamine.[51]  The trial court

---

[47] 428 U.S. 465 (1976).

[48] *Id.* at 494.

[49] 372 U.S. 293 (1963).

[50] *See Gamble v. Okla.*, 583 F.2d 1161, 1164–65 (10th Cir. 1978).

[51] Vol. 3 in Appellate Case No. 13-110218-A, 63–72.

considered the search warrant's affidavit's validity at a hearing on June 12, 2008.[52]  The trial

court denied the motion to suppress, finding: 1) Chief Konrade's testimony at the hearing

confirmed the affidavit accurately reported Nelson's statement, and 2) the affidavit contained no

material misrepresentations or statements made in reckless disregard for the truth.  Adams also

fully litigated these issues in his direct appeal to the KCOA with the assistance of newly

appointed counsel.  Upon the KCOA's affirmance of that decision,[53] he sought review by the

KSC.  Under these facts, Adams had an opportunity for a full and fair hearing on these issues.[54]

Even if Adams' Fourth Amendment claim is not barred by *Stone v. Powell*, he fails to

show that the KSC's decisions on these issues were based upon an unreasonable application of

Supreme Court precedent or involved an unreasonable determination of the facts.[55]  Thus,

Adams is not entitled to relief based on Grounds 1-3.

**B.  Ineffective Assistance of Counsel**

**1.   Trial Counsel's Performance (Grounds 5, 7, 8, and 11)**

Adams alleges his trial counsel, Robert Slinkard, provided ineffective assistance three

different ways: 1) failing to review the video of Nelson's arrest and all other discovery with

Adams prior to the suppression hearing (Ground 5); 2) failing to communicate with Adams prior

to the suppression hearing (Ground 7); and 3) failing to review the video of Nelson's arrest with

Adams and to seek his input to develop a defense prior to trial (Grounds 8 and 11).[56]  The KCOA

---

[52] Vol. 9 in Appellate Case No. 13-110218-A, Tr. of Pretrial Motions Hrg.

[53] *State v. Adams*, 232 P.3d 347, 352–54 (Kan. App. 2010).

[54] *See Glynn v. Heimgartner*, No. 12-3031-SAC, 2013 WL 2449545, at *2 (D. Kan. June 5, 2013); *Walker v. Heimgartner*, No. 15-CV-3230-DDC, 2017 WL 1197645, at *12 (D. Kan. Mar. 31, 2017), *certificate of appealability denied sub nom., Walker v. Schnurr*, No. 17-3151, 2017 WL 6048613 (10th Cir. Dec. 7, 2017).

[55] *Adams*, 273 P.3d 718, 723–26 (Kan. 2014) (citing *Franks v. Delaware*, 438 U.S. 154 (1978); *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *State v. Johnson*, 259 P.3d 719 (Kan. 2011); *State v. Slater*, 986 P.2d 1038 (Kan. 1999); and distinguishing *State v. Landis*, 156 P.3d 675 (Kan. App.), *rev. denied*, 284 Kan. 969 (2007)).

[56] Doc. 20 at 4–10 (Petitioner stated Ground 11 was a continuation of Ground 8).

rejected all these claims, finding Slinkard's performance was adequate. Adams now argues that

the KCOA's decision was an unreasonable application of *Strickland*. The Court disagrees.

The KCOA's analysis, in pertinent part, was as follows:

When a defendant seeks to set aside the result of a criminal trial on the ground that his or her defense attorney provided ineffective assistance, the defendant has the burden to show (1) that the attorney's work was below minimum standards and, thus, was constitutionally deficient; and (2) that the attorney's substandard work prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mattox v. State*, 293 Kan. 723, Syl. ¶ 1, 267 P.3d 746 (2011). An attorney's performance was deficient if it fell below an objective standard of reasonableness considering all the circumstances. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). Courts evaluating an attorney's performance must indulge a strong presumption that the attorney's conduct fell within the wide range of reasonable assistance an attorney might provide and must attempt to eliminate the impact of hindsight by looking at the attorney's conduct from the attorney's perspective at the time. 283 Kan. at 90.

Under the second prong, a party has been prejudiced by trial counsel's deficient performance if he can show that there is a reasonable probability that the outcome of the trial would have been different if he had been appropriately represented. 283 Kan. at 90. A reasonable probability is a probability sufficient to undermine confidence in the trial's outcome. *State v. Bricker*, 292 Kan. 239, 246, 252 P.3d 118 (2011).

The district court held that Adams had failed to establish both required prongs. First, it held that Adams' counsel's performance was adequate. Substantial evidence supports this conclusion: Slinkard met with Adams many times while preparing for trial, filed numerous motions on Adams' behalf and on Adams' request, cross-examined witnesses, participated in numerous hearings, and went over most of the evidence in the case with Adams as soon as he could.

Adams' primary argument on appeal appears to be that Slinkard was ineffective because he didn't go over the video of Nelson's traffic stop with him before the hearing on the motion to suppress and because he didn't introduce the video at trial. Adams contended in the district court that the fact that Nelson did not implicate him while being videotaped was proof that she never implicated him at all, which in turn meant that the police must have made up the information they provided to the judge to get a search warrant for Adams' home.

But, as the district court noted, introducing the video would not have proved that Nelson did not implicate him. It merely would have shown that she didn't implicate him while being recorded. Adams even admitted at his hearing that just

because Nelson hadn't implicated him on video did not mean that she hadn't implicated him at some other time before the warrant was issued.

Slinkard's decision not to introduce this video was entirely reasonable because it did not prove that the police had lied to get a warrant and therefore didn't help Adams' case. Though Adams may have wished for a different outcome at trial, no evidence we have located in the record—and certainly no evidence cited in Adams' appellate brief—suggests that Slinkard's performance fell outside the wide range of reasonable representation a defendant is guaranteed by the [C]onstitution. The district court therefore correctly held that Adams failed to establish that his counsel was ineffective under the first element of the Strickland test.

Further, Adams failed to show that he had been prejudiced by his counsel's performance, the second element of the *Strickland* test. With only one exception, a failure to establish prejudice is fatal to an ineffective-assistance-of-counsel claim. That exception applies when counsel completely abandons a client and the character of the adversarial process is so undermined as to be fundamentally unfair. *See United States v. Cronic*, 466 U.S. 648, 656–57 . . . (1984); *State v. Adams*, 297 Kan. 665, Syl. ¶ 4. 304 P.3d 311 (2013).

Here, Slinkard didn't abandon Adams—he represented him before trial, throughout the trial, and during sentencing. Slinkard tested the prosecution's case throughout the trial. Adams' failure to prove prejudice separately precludes granting relief based on his claim of ineffective assistance of counsel.[57]

The Court finds the KCOA's analysis of whether trial counsel was constitutionally ineffective was not contrary to clearly established Supreme Court law. The KCOA evaluated the evidence of record and applied law consistent with the *Strickland* standard for ineffective counsel. Because the KCOA reasonably applied the *Strickland* standard in determining that Adams was not denied his right to effective assistance of counsel, Adams is not entitled to habeas relief based on Grounds 5, 7, 8, and 11.

## 2. Evidentiary Errors (Grounds 4, 6, and 10)

Grounds 4, 6, and 10 claim the State introduced perjured and false testimony at the preliminary hearing, the pretrial motions hearing, and at trial. All three grounds are premised on

---

[57] *Adams v. State*, 337 P.3d 72, 2014 WL 5801182, *3–4 (Kan. App. 2014).

the theory that Nelson's testimony that precursors to manufacture methamphetamine would be found at the home she shared with Adams were inconsistent with what she said on the video of her arrest.  Respondents assert that Adams never raised Grounds 4, 6, and 10 to any Kansas Appellate Court.[58]  The Court disagrees.  Adams raised these issues in his state habeas petition.[59] The state district court lumped them with Adams' ineffective assistance of trial counsel claims[60] and denied the state habeas petition.[61]  Adams appealed that decision to the KCOA, alleging one issue—error in overruling the Petition.[62]  Because the KCOA's ruling touched on the alleged perjured testimony, the Court will consider the merits of these alleged errors in that context.

The district court found the following with respect to the alleged perjured testimony:

[T]he evidence that is at issue here today regarding the existence of methamphetamine manufacturing precursors that may or not be present in the home of the Defendant apparently were made at sometime, but there is a lack of any recording so that it's not certain.

The only reliable information that we have is the restatement of those statements by Rachel Nelson that were made by the officers who were requesting the warrant, and, then, who later testified.

Mr. Adams is concerned that the video recording that he has does not depict all of the statements that are attributed to Rachel Nelson.  But, as has been pointed out, a recording is not exclusive where a suspect, or a person in custody, has an opportunity to make additional statements after the recording is terminated.  It appears to me that some of those statements were made to the arresting deputy after the recording was terminated.

Even attributing the most favorable light to Mr. Adams, because the statements that were made were never refuted by Rachel Nelson, and the articles that were allegedly described were, in fact, discovered.  And, that makes it likely—or, it makes it appear more likely that those statements were made by Rachel Nelson after her stop.

---

[58] Doc. 12 at 10.

[59] Vol. 1 in Appellate Case No. 13-110850-A, 3–44.

[60] Tr. of Oct. 1, 2012 Proceedings, 75:7–13 ("I recognize there are 13 issues identified in the Petition.  But, those essentially restate a primary issue just simply nuanced in different language.  So, it really is based upon the allegation that Mr. Slinkard was not effective in representing Mr. Adams at trial and prior to trial.").

[61] *Id.* at 78.

[62] Brief of Appellant in Case No. 13-11850-A, i.

\* \* \*

> In addition, there were no witnesses that controverted the evidence that was given for the basis for the search warrant, and there was no evidence that would clearly show there was any perjury presented.  And, it appears that Mr. Slinkard elicited the testimony that was available from these witnesses. . . .  [I]t doesn't appear that he could have done any more that would have had an effect on the outcome of the case.  And, for that reason, I'm denying the Petition.[63]

The KCOA succinctly affirmed the trial court's ruling with respect to the above in the introductory paragraph of its opinion:

> Adams claims that the video proves that his roommate, Rachel Nelson, never implicated him as a drug user or manufacturer and that the police lied when they said that she did on their request for a search warrant.  But the video wasn't a complete record of the State's communication with Nelson, and Nelson testified that she had told the police that Adams used and manufactured drugs.  Because the video would not have exonerated Adams and was not otherwise relevant, his counsel's decision not to use the video was within the wide range of reasonable choices counsel may constitutionally make.  The district court correctly held that Adams' counsel's performance was adequate and could not be the basis for habeas corpus relief.[64]

To the extent that Adams raises these grounds as part of his ineffective assistance of counsel claim, the Court denies relief for the reasons stated in Section III.B.1.  To the extent he attempts to raise these grounds independently, he has procedurally defaulted them.  Even if they were not defaulted, they would fail.

To find a violation of due process based on state evidentiary rulings, the Court must find the rulings were so grossly prejudicial[65] that they "rendered the trial so fundamentally unfair that a denial of constitutional rights results."[66]  The Court must examine the entire proceedings, including the strength of the evidence against Petitioner and instructions to the jury, to determine

---

[63] Tr. of Oct. 1, 2012 Proceedings, 75:24–78:13.

[64] *Adams v. State*, 337 P.3d 72, 2014 WL 5801182, \*1 (Kan. App. 2014).

[65] *Harris v. Poppel*, 411 F.3d 1189, 1198 (10th Cir. 2005) (quoting *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002)).

[66] *Id.* at 1197 (quoting *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002)).

whether state evidentiary rulings resulted in fundamental unfairness.[67]  Here, in light of all the evidence, the Court finds allowing Nelson's testimony did not render the trial fundamentally unfair.  Grounds 4, 6, and 10 do not provide a basis for federal habeas relief.

### 3.    Denial of Request for Substitute Counsel (Ground 9)

Ground 9 alleges the trial court erred when it denied Adams' motion for substitute trial counsel without investigating his concerns about Slinkard's performance as counsel. Respondents argue this ground should be procedurally barred as it was made in passing and not adequately presented to the state appellate courts.[68]  Adams counters that he preserved this issue by raising ineffective assistance of counsel claims in his 1507 Motion and appeal.

To the extent that Adams raises Ground 9 as part of his ineffective assistance of counsel claim, the Court denies relief for the reasons stated in the section above.  To the extent he attempts to raise Ground 9 as an independent ground for federal habeas relief, the Court finds one sentence in Adams' appellate brief that simply recites the denial of the motion for substitute counsel insufficient to preserve the issue for federal review.[69]  Ground 9 is procedurally defaulted.

Even if this ground was not procedurally defaulted, Adams would not be entitled to federal habeas corpus relief on this ground.  "A defendant seeking substitution of counsel must show 'good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'"[70]  Courts considering such a motion should consider four factors: 1) whether defendant made a timely motion requesting new

---

[67] *Id.*

[68] Doc. 12 at 15.

[69] *See* Brief of Appellant in Appellate Case No. 13-110850-A at 4.

[70] *Mallish v. Raemisch*, 662 F. App'x 584, 587 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 2110 (2017) (quoting *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987)).

counsel; 2) whether the trial court adequately inquired into the matter; 3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense; and 4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication.[71]

Adams' motion for substitute counsel was filed on June 24, 2008, six days before the scheduled trial date.[72]  The motion stated:

> 1) [Slinkard] is not defending me to the best of his ability[;]
>
> 2) He is not doing research to the best of his ability in support of his motions for a proper defense [o]n my behalf[;]
>
> 3) He has not yet had time to sit down with me and go over all the evidence against me and prepare a defense in previous [proceedings; and]
>
> 4) I have not seen any DVD's, CD's containing the evidence of the witnesses that the State has against me.  I have been promised to see these 2 months ago by my Attorney.[73]

On the same day, a final pretrial conference was held via telephone.[74]  After hearing statements of Adams, Slinkard, and the States' attorney, the trial court found "[Slinkard] has represented [Adams] adequately and is making thorough preparation for trial which will include lengthy conferences with [Adams] in an effort to prepare cross-examination for the State's witnesses, as well as to examine evidence that is expected to be presented . . . at trial."[75]  The trial court confirmed that all discovery materials had been delivered to Slinkard and forwarded to Adams, and that "[Adams] has now had an opportunity to review all materials that are intended to be

---

[71] *See Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000) (citations omitted).

[72] Vol. 3 in Appellate Case No. 13-110218-A, 163–64.

[73] *Id*.

[74] *Id*. at 165.

[75] *Id*. at 165–66.

presented as evidence at trial."[76]  Having reviewed the entire record and totality of the circumstances, the Court finds that Adams' Sixth Amendment right to counsel was not violated when the state district court refused to appoint substitute counsel.

### 4.   Habeas Counsel's Performance (Grounds 17–20)

Grounds 17–20 assert ineffective assistance of counsel claims against Louis Podrebarac, the attorney appointed to represent Adams for resentencing and on the 1507 Motion.[77]  Adams claims Podrebarac failed to review the 1507 Motion and motion to arrest judgment prior to the October 1, 2012 hearing (Grounds 20 and 18, respectively) and failed to contact him until minutes before the hearing (Grounds 17 and 19).  Adams concedes that Grounds 17–20 have never been brought before a Kansas court and are thus procedurally defaulted.[78]

Adams argues that cause exists to overcome these procedural defaults.  Adams says his appointed appellate attorney, Sam Kepfield, failed to raise these issues in the appellate brief and had he done so, "a different outcome may have ensued for Adams in the appeal of his [1507 Motion]."[79]  Adams also argues Kepfield sent him a letter that "rushed" him and led him to believe that his only recourse was to file a petition for review with the KSC.[80]

Adams' reliance upon that letter to overcome procedural default is misplaced.  The letter was sent after the default occurred and did not relay any inaccurate information.  The thirty-day deadlines are set by the courts, not Kepfield.  More importantly, Adams "cannot show cause based on an argument that post-conviction appellate counsel either failed to present all claims or

---

[76] *Id.* at 166.

[77] Vol. I in Appellate Case No. 13-110218-A, 55.

[78] Doc. 20 at 12.

[79] *Id.* at 13.

[80] *Id.* at 13–14.

ignored his requests to present claims, because it has plainly been held that there is no constitutional right to counsel in collateral proceedings."[81]  The Court finds Adams has failed to show cause to overcome the default.

Adams' only means of gaining federal habeas review of these issues is a claim of actual innocence under the fundamental miscarriage of justice exception.[82]  Adams does not argue actual innocence.  And neither his conclusory assertions of a miscarriage of justice nor this Court's review of the record demonstrates that a miscarriage of justice would result if these issues are not heard.

Even if Adams had shown cause to overcome the default, he is not entitled to relief on these claims.  28 U.S.C. § 2254(i) states: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  Thus, Grounds 17–20 cannot provide the bases for federal habeas relief.

### 5.    Appellate Counsel's Effectiveness (Grounds 16 and 23)

Grounds 16 and 23 assert ineffective assistance of appellate counsel for failing to raise all trial errors challenged in Adams' Petitions.  More specifically, Adams claims appellate counsel omitted the following issues on appeal: 1) marital privilege; 2) dual versions of the verdict form; and 3) lack of jurisdiction based on the reasonable doubt instruction.[83]

---

[81] *Livingston v. Kan.*, No. 09-3056-SAC, 2010 WL 890213, at *10 (D. Kan. Mar. 10, 2010), *aff'd*, 407 F. App'x 267, 272–73 (10th Cir. 2010) (citing *Pa. v. Finley*, 481 U.S. 551, 555 (1987) and *Coleman v. Thompson*, 501 U.S. 722, 757 (1991)).

[82] *Sawyer v. Whitley*, 505 U.S. 333, 339–341 (1992).

[83] Doc. 24 at 10–11.

Claims of ineffective assistance of appellate counsel are also governed by *Strickland's* standards.[84]  "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue."[85]  If the omitted issue has no merit, counsel's failure to raise it does not constitute ineffective assistance of counsel.[86]

As to the first alleged omitted issue, the trial court denied Adams' marital privilege claim after hearing testimony from his alleged spouse (Rachel Nelson), his mother (Arlene Adams), and Nelson's sister (Anna Mucker), stating:

> It's apparent that there's been evidence to establish the capacity, and then holding the couple out as a . . . married couple.  But . . .  the evidence fails to establish a present intent.

> First, I'm going to refer to the preliminary examination transcript . . .  when Rachel Joanne Nelson was called as a witness, she was asked, "Could you state your name for the purposes of the record, please?"  The response, "Rachel Joanne Nelson."

> And, then, she was asked a few questions, and then it went back, or, went to the issue of whether she was acquainted with Kenneth Adams.  And, this is on page 121 of the preliminary hearing transcript, at the bottom of that page, line 24: "And, you know Kenny Adams?"  Answer, "Yes."  Following question, . . . "How did you know Kenny?"  Answer, "He's my live-in."  "Okay.  Live in boyfriend?"  Answer, "Yes."

> And, I understand that marriage wasn't the issue at the time.  But, that's one reason why it appears to be persuasive as to what her belief was regarding their relationship.

> I also note that the testimony from Rachel Joanne Nelson indicated, on at least two occasions, they had professed a future intention to marry. . . .

> As she was testifying, I asked her, "What was the exchange?"  And, she said, "Will you be my wife?"  And, she said, "Yes."  Which, could be inferred to mean in the future.  But, it was because of a concern about faithfulness.

---

[84] *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999).

[85] *Id*.

[86] *Id*. (quoting *United States v. Cook*, 45 F.3d 388, 392–93 (10th Cir. 1995)).

And, those sorts of commitments or promises don't include the mandatory promise, "I will be your wife for the rest of my life. I will be your spouse for the rest of my life." It is more a matter of comforting a person to say — similar to saying, "I love you. I will stay with you." Those don't establish an intent to be married, with all of the consequences.

Finally, when they exchanged the rings, her testimony was that their intention was to go to Las Vegas and become married. So, those sorts of statements indicate . . . a future intent to [marry].

And, finally, I must make some credibility determinations . . . [obtaining utilities services and then reporting it on their taxes] would state an effort to obtain the benefit of being married when they may not have, in fact, been married. . . .

It appears to me that it's equally believable that they were not intending to be married presently, prior to Mr. Adams' incarceration. And, that it could be that their marriage would be established, at some point during incarceration, but I don't know what that point is.

And, it appears to me, today, that [Rachel], intends to be Kenneth Adams' wife as of now.

So, what I find is a failure to establish a marriage before today. So, without having any proof of marriage before today, I would deny the motion as to any privileges that would arise before this date.[87]

To prove the existence of a common law marriage in Kansas, petitioner would have had to prove: 1) capacity of the parties to marry; 2) a present marriage agreement between the parties; and 3) a holding out of each other as husband and wife to the public.[88] Because the weight of the conflicting testimony supported a finding that there was no present intent, Adams has failed to establish that his marital privilege claim was meritorious.[89]

---

[87] Tr. of Pretrial Motions on June 12, 2008, 125:17–128:20.

[88] *In re Estate of Antonopoulos*, 993 P.2d 637, 647 (Kan. 1999).

[89] *See Brown v. McKune*, No. CIV.A.06 3046 MLB, 2006 WL 3412275, at *17 (D. Kan. Nov. 27, 2006) (denying claim of ineffective assistance of trial counsel for failing to preserve the marital privilege argument; also finding it unlikely that the Kansas Supreme Court would overturn the trial court's determination as to the privilege because the weight of the conflicting testimony supported a finding that there was no common-law marriage).

The verdict form issue also lacks merit because the alternative conviction for Attempted Manufacturing of methamphetamine was dismissed as duplicative. As for the alleged third omitted issue, the record shows it was raised on appeal in *State v. Adams*, No. 110,218. The KCOA dismissed the appeal, finding it lacked jurisdiction because the underlying motion was untimely. The KCOA, however, also noted that the KSC had specifically approved the instruction language given in *Miller v. State*, 318 P3d 155 (Kan. 2014). Thus, the KCOA would have rejected the argument had it considered the merits.

In sum, the omitted claims are all meritless. It necessarily follows that appellate counsel was not ineffective for failing to raise them on appeal.

### C.  Marital Privilege (Ground 22)

Ground 22 claims the trial court violated Adams' constitutional rights when it denied his claim of marital privilege and allowed his purported common-law wife, Joann Nelson, to testify at trial. Adams states this issue was raised to the KCOA.[90] The Court's review of the state record indicates otherwise. Marital privilege was not listed in Adams' statement of issues. Because Adams did not present this claim on direct appeal to the KCOA, Ground 22 is procedurally defaulted.

Even if this ground was not procedurally defaulted, Ground 22 cannot serve as a basis for federal habeas relief because it does not allege deprivation of a right under the United States Constitution. Alleged violations of state law are not cognizable in a federal habeas corpus proceeding.[91]  "The marital privilege is merely a testimonial privilege based on statutory

---

[90] Doc. 24 at 2.

[91] *Pulley v. Harris*, 465 U.S. 37, 41–42 (1984).

provisions or found in the common law . . . . [and] does not rise to the level of the

constitutionally guaranteed right against self-incrimination under the Fifth Amendment."[92]

### D.  Prior Drug Use Instruction (Ground 12)

Adams claims he is entitled to federal habeas relief because the trial court allowed

testimony regarding his prior drug use and gave an instruction that allowed the jury to consider

his prior drug use in determining whether he knowingly possessed the controlled substance.  He

argues this instruction allowed the jury to find him guilty of possession of methamphetamine

without proving current possession.  The KSC rejected this argument, stating:

> [T]he evidence of Adams' drug use was use *at the time he was committing the crimes* for which he was charged.  Both the version of K.S.A. 60–455 at issue in *Boggs* and the current version found at K.S.A. 2010 Supp. 60–455, apply to evidence "the person committed another crime or civil wrong on *another* specified occasion."  (Emphasis added.)  Hence, by its plain language, K.S.A. 60–455 does not apply to a circumstance involving the *same* occurrence.  Further, admission of evidence of drug use is not contrary to the purpose of K.S.A. 60–455 — the evidence is not admitted as propensity evidence but as circumstantial evidence showing a defendant had possession and control over the drugs.  Consequently, many courts allow the admission of evidence establishing that a defendant had just used drugs or was under the influence of drugs at the time of an arrest because that evidence links the defendant with any drugs that are found in an area.  See Annot., 56 A.L.R.3d 948, § 8[a], pp. 962–65, and p. 103 (2011 Supp.).

> We conclude it is not error to use PIK Crim.3d 67.13–D to inform a jury that a defendant's use of drugs is a factor the jury may consider in determining whether the defendant knowingly possessed a controlled substance when the evidence at trial is limited to the defendant's use of controlled substances on the same occasion as the one when the drugs were allegedly possessed by the defendant.  In light of that conclusion, we need not consider whether the jury would have reached a different verdict had the instruction not been given.[93]

---

[92] *Rankin v. Roberts*, 788 F. Supp. 521, 523 (D. Kan. 1992), *aff'd*, 9 F.3d 117 (10th Cir. 1993) (citations omitted).

[93] *State v. Adams*, 273 P.3d 718, 727 (Kan. 2012) (emphasis in original).

A federal habeas court can set aside a state conviction based on an erroneous instruction only when the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."[94]  Petitioner bears the burden of proving that an erroneous instruction was so prejudicial and so infected the entire trial that the resulting conviction violates due process.[95] In reviewing the instruction, habeas courts consider the instruction in the context of the trial record and the instructions as a whole.[96]

The Court finds Petitioner's argument insufficient to establish a constitutional violation. The challenged instruction correctly stated Kansas law.  On this record, the allegedly erroneous instruction did not so infect the entire trial as to deprive Adams of his constitutional rights. Accordingly, Adams is not entitled to habeas relief on Ground 12.

### E.  Sentencing Errors (Grounds 14 and 24)

Adams raises two sentencing errors, one made during sentencing and the other during resentencing.  Neither provides a basis for habeas relief.

#### 1.    Sentence Enhancement Based on Prior Convictions (Ground 14)

Ground 14 argues that use of Adams' prior convictions to increase his sentence, without first putting them to a jury, violated *Apprendi v. New Jersey*.[97]  The KSC noted that it has consistently rejected the *Apprendi* argument, citing *State v. Ivory*[98] and its progeny, and would continue to hold that the use of prior convictions for sentencing enhancement is constitutional.[99]

---

[94] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

[95] *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (stating to overturn state conviction, petitioner must establish not merely that instruction is undesirable, erroneous or even "universally condemned," but that it violated constitutional right).

[96] *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

[97] 530 U.S. 426 (2000).

[98] 41 P.3d 781 (Kan. 2002).

[99] *Adams*, 273 P.3d at 727.

Because *Ivory* is consistent with *Apprendi*, the Court finds the KSC's adjudication of this issue did not result in a decision that was contrary to clearly established federal law as determined by the Supreme Court.[100]  *Apprendi* holds that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[101]  Adams' reading of *Apprendi* ignores the italicized conditional phrase.  If the sentence enhancement is based on prior convictions, then it does not have to be submitted to a jury.  Accordingly, Ground 14 does not provide a basis for habeas relief.

### 2.    Resentencing Error (Ground 24)

Ground 24 alleges the state district court failed to follow the KSC's edicts on remand for resentencing on his conviction for possession of lithium metal.  Adams claims "the District Court should have rolled the 'lithium metal' charge into the already existing conviction of 'paraphernalia' under K.S.A. [§ 65-4152(a)(3)]."[102]  He argues the district court instead treated that conviction as "a new conviction with the element of conspiracy added."[103]  These arguments lack merit.

First, the KSC directed the district court to resentence the possession-of-lithium-metal count as a severity level 4 drug felony.[104]  This does not mean the district court was to roll that count into the possession-of-drug-paraphernalia count.  Had that been the intent, the KSC would

---

[100] *See Pruitt v. Shelton*, No. 11-3116-SAC, 2012 WL 5949210, at *7 (D. Kan. Nov. 28, 2012) (*Ivory* holding consistent with *Apprendi*); *Fletcher v. Kansas*, No. 10-3253-SAC, 2013 WL 537717, at *8 (D. Kan. Feb. 12, 2013) (same).

[101] *Apprendi*, 530 U.S. at 490 (Italics added).

[102] Doc. 24 at 12.

[103] *Id*.

[104] *Adams*, 273 P.3d at 728–29.

have vacated the conviction for possession of lithium metal.  The KSC, however, affirmed all six of Adams' convictions.

Second, the district court did not add a conviction for conspiracy or add a conspiracy element to the possession-of-lithium-metal conviction at resentencing.  At that hearing, the district court stated, in pertinent part:

> I find that the Supreme Court Opinion should be followed in imposing the sentence for a level four drug felony for Count Three, possession of lithium metal with intent to manufacture methamphetamine, that being sentenced as a level four.  I'm going to order [an] aggravated portion of the grid box, and it will run concurrent with Count One.  So, 12 months.  That would also give it a 12-month post-release supervision on that particular offense.  And, I believe you would be eligible for 20 percent good time credit.  All of the other sentences that were ordered on September 30th, 2008, would be enforced as issued.[105]

The Journal Entry of Judgment, filed November 15, 2012, accurately recorded the above ruling.[106]  Ultimately, the district court did exactly as the KSC instructed—it changed the sentence for possession of lithium metal from 51 months to 12 months by treating that count as a severity level 4 drug felony.[107]  Thus, Ground 24 does not provide a basis for habeas relief.

### F. Cumulative Error (Ground 15)

Lastly, Adams asserts that the state courts' cumulative errors entitle him to federal habeas relief.  The cumulative-error doctrine applies in the federal habeas context only where there are two or more actual constitutional errors.[108]  Because the Court has found no error, let alone multiple errors, Adams' cumulative error argument fails.

---

[105] Tr. of Oct. 1, 2012 Hrg, 14:16–15:7.

[106] Vol. 1 in Appellate Case No. 13-110218-A, 61–78.

[107] *Id*. at 68.

[108] *Jackson v. Warrior*, 805 F.3d 940, 955 (10th Cir. 2015) (citing *Thacker v. Workman*, 678 F.3d 820, 849 (10th Cir. 2012)).

## IV.   Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[109]  To satisfy this standard, the movant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"[110]  While a movant is not required to demonstrate that his appeal will succeed to be entitled to a certificate of appealability, he must "prove something more than the absence of frivolity or the existence of mere good faith."[111]  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."[112]  The rulings made above are not the type that reasonable jurists could debate or would conclude were wrong.  The Court thus declines to issue a certificate of appealability for this Order.

**IT IS THEREFORE ORDERED BY THE COURT** that Adams' Petition for Writ of Habeas Corpus (Doc. 1) and his Amended Petition (Doc. 24) are **DENIED.**

**IT IS SO ORDERED.**

Dated: <u>March 12, 2018</u>

               S/ Julie A. Robinson
               JULIE A. ROBINSON
               UNITED STATES DISTRICT JUDGE

---

[109] 28 U.S.C. § 2253(c)(2).

[110] *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n. 3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).

[111] *Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (quotation omitted).

[112] *Id.* at 336.